UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

| | : | |
|---|---|---|
| SHIVA STEIN, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO: _____ |
| | : | |
| - against - | : | |
| | : | **COMPLAINT** |
| ALCOA CORPORATION, | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

Plaintiff, Shiva Stein, alleges, upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys, except as to those allegations that pertain to the plaintiff herself, which are alleged upon knowledge, as follows:

## NATURE OF THE ACTION

1. This is a direct stockholder action under Section 14(a) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78n(a) (the "Exchange Act").

2. Plaintiff, a stockholder in Alcoa Corporation ("Alcoa" or the "Company"), seeks relief for Alcoa's failure to comply with the disclosure rules concerning proxy statements that were promulgated by the United States Securities and Exchange Commission ("SEC") under the Exchange Act, in 17 C.F.R. § 240.14a-101 (Item 10(a)(1)) ("Item 10(a)(1)").

3. Item 10(a)(1) requires:

Compensation Plans. If action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed, furnish the following information:

(a) Plans subject to security holder action.

   (1) Describe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, indicate

> the approximate number of persons in each such class, and state the basis of such participation.

Compliance with Item 10(a)(1) is required by SEC Rules 14a-3(a), 17 C.F.R. § 240.14a-3(a), and 14a-9(a), 17 C.F.R. § 240.14a-9(a).  Item 10(a)(1) and Rules 14a-3(a) and 14a-9(a) are legislative, substantive regulations that have the force and effect of law.  They are not mere interpretations of the Exchange Act.

4. Alcoa failed to comply with these regulations with regard to two board recommendations on compensation plans – Voting Items 5 and 6 – which votes were taken at Alcoa at the May 10, 2017 annual stockholders' meeting.

5. This complaint seeks an equitable decree nullifying those votes and the corporate actions taken based on them.  Voting Item 5 was for stockholder approval of the Alcoa Corporation Annual Cash Incentive Plan (as Amended and Restated) (the "Annual Plan"), which the board of directors recommended a vote "FOR."  Voting Item 6 was for stockholder approval of the Alcoa Corporation 2016 Stock Incentive Plan (as Amended and Restated) (the "Stock Plan"), which the board of directors recommended a vote "FOR."

6. What is more, unless Alcoa passes new properly-disclosed stockholder-approved compensation plans at the Company's 2018 annual meeting, it will not have any plan from which to provide tax-deductible compensation under I.R.C. § 162(m), which was a key reason why the Company asked stockholder for approval of the Annual Plan and Stock Plan in 2017.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a).

8. In connection with the acts, omissions, conduct, and wrongs alleged herein, defendant used the mails and the means or instrumentalities of interstate commerce.

9. Venue is proper in this district because as allowed under Section 27(a) of the Exchange Act, for this district is where the violation at issue in this case occurred because the plaintiff is a resident of this district.

## PARTIES

10. Plaintiff is, and has been continuously since November 1, 2016, a holder of Alcoa common stock, which is when Alcoa's former parent Alcoa Inc., a publicly held Pennsylvania corporation, spun it off to its stockholders, including the plaintiff. The former parent changed its name to Arconic Inc., and its stock exchange ticker symbol to ARNC. It gave its old ticker symbol AA to Alcoa.

11. Alcoa is a corporation organized under the laws of the State of Delaware. The Company's last fiscal year ended December 31, 2016. As of March 10, 2017, it had 184,204,763 shares of common stock issued and outstanding. The Company's common stock is traded on the New York Stock Exchange under the symbol AA. Alcoa is a global company that engages in the production of bauxite, alumina, and aluminum, with a portfolio of value-added cast and rolled products, and energy assets.

## WRONGFUL ACTS AND OMISSIONS

12. Alcoa held an annual stockholders' meeting on May 10, 2017. It furnished the proxy statement for this annual meeting (Proxy Statement) on or about March 17, 2017, to solicit their proxies for six items.

13. SEC Rule 14a-3(a), requires that public companies may not solicit stockholders' proxies without furnishing a proxy statement "containing the information specified in Schedule 14A."

14. Item 10(a)(1) of Schedule 14A requires that "[i]f action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed," the proxy statement soliciting this vote must "[d]escribe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation."

15. Under SEC Rule 14a-9(a) omission of information from a proxy statement is actionable if the SEC specifically requires its disclosure.

16. The Annual Plan by its terms was to become effective upon the stockholders' approval at the May 10, 2017 annual meeting. But the stockholders' vote was ineffective because of the omission from the Proxy Statement of the information required by Item 10(a)(1). The Annual Plan provides for the payment of bonuses in cash – and only in cash – for Alcoa officers and key employees for work in each fiscal year or such shorter period as may be determined. The Annual Plan does not state a termination date. The Annual Plan provides that the maximum amount payable to an Alcoa employee who is a covered employee under IRC § 162(m) is $9,000,000 per fiscal year. The Annual Plan does not provide a limit for any other Alcoa employee.

17. The Stock Plan by its terms was to become effective upon the stockholders' approval at the May 10, 2017 annual meeting. But the stockholders' vote was ineffective because of the omission from the Proxy Statement of the information required by Item 10(a)(1). The Stock Plan provides for stock-based compensation for Alcoa employees and directors. Such compensation can be in the form of stock options, stock appreciation rights, restricted stock, restricted stock units, any other right based on Alcoa stock, and other rights based on or

4

denominated in cash or other property. The Stock Plan provides that compensation based on performance shall require a minimum period to achieve the performance of not less than one year, but, for awards not meant to comply with IRC § 162(m), there is no minimum period for the vesting of stock options or stock appreciation rights or the lapse of restrictions on stock or restricted stock units. The Stock Plan provides that no awards shall be granted under it after May 10, 2027. The Stock Plan provides that, for IRC § 162(m) purposes only, the maximum amount to an Alcoa employee in any one fiscal year is 10,000,000 shares for stock options and/or stock appreciation rights. In addition, the maximum amount to an Alcoa employee in any one fiscal year is 4,000,000 restricted shares plus 4,000,000 restricted share units, if they are to be IRC § 162(m) compliant. Finally, the maximum amount to an Alcoa employee in any one fiscal year is $15,000,000 for an IRC § 162(m) award that is valued in cash or property other than Alcoa stock. If they are not to be IRC § 162(m) compliant, the Stock Plan provides no limit at all.

18. Voting Items 5 and 6 of the Proxy Statement failed to disclose the classes of eligible participants, their approximate number, and the bases of their participation for the Annual Plan and the Stock Plan. Thus, the solicitation of these votes did not comply with the SEC regulations, and it was unlawful under § 14(a) of the Exchange Act.

19. The Proxy Statement made clear that a principal reason stockholders were being asked to vote for these plans was to preserve the IRC § 162(m) tax-deduction. IRC § 162(m) limits the amount of compensation that a company can deduct with regard to its highest-compensated officers to $1 million each per year, unless such additional compensation is awarded pursuant to objective goals that are approved by stockholders.

20. With regard to the Annual Plan, the Proxy Statement explained that its "purpose" was "to attract, retain, motivate and reward participants by providing them with the opportunity

to earn annual cash incentive compensation related to the Company's performance, as well as to allow the awards granted under the Annual Incentive Plan to be qualified as performance-based compensation within the meaning of Section 162(m) and, therefore, preserve for the Company the federal income tax deductibility of incentive compensation paid to senior executive officers who are 'covered employees' under Section 162(m)."

21. With regard to the Stock Plan, the Proxy Statement stated, "The primary purposes of this proposal are to (i) preserve and extend the Company's ability to deduct "qualified performance-based compensation" granted to certain of its executive officers, without regard to the limitation imposed by Section 162(m), and (ii) increase the number of shares authorized for issuance under the Current Plan from 19,000,000 to 30,000,000 under the Amended Plan, subject to the adjustment and certain other provisions of the Amended Plan."

22. But as a result of the disclosure violations for Voting Items 5 and 6, the Annual Plan and the Stock Plan are ineffective, and only the predecessors to those plans remain in effect. But for purposes of retaining the IRC § 162(m) tax-deduction, those predecessor plans are only good until the annual stockholders' meeting in 2018 for the payment and award of IRC § 162(m) compliant compensation. This is because under Treas. Reg. 1.162-27(f)(4)(iii), the IRC § 162(m) transition period that Alcoa is currently enjoying as a result its spin-off from Alcoa, Inc. only lasts until "the first regularly scheduled meeting of the shareholders of the new publicly held corporation that occurs more than 12 months after the date the corporation becomes a separate publicly held corporation."  This means that Alcoa can only continue to deduct compensation under IRC § 162(m) under the predecessor plans to the Annual Plan and the Stock Plan under the 2018 annual meeting. Indeed, Alcoa acknowledged this in the Proxy Statement:

> Section 162(m) includes a special transition period for certain spin-offs of
> subsidiaries of publicly held companies that become separately held public

companies. During this transition period, any compensation paid to covered employees under the Annual Incentive Plans and the 2016 Stock Incentive Plan will be exempt from the deduction limits under Section 162(m) for a limited period of time even without stockholder approval, so long as the other applicable requirements of Section 162(m) are met (i.e., requirements relating to the composition of the compensation committee, the performance goals and the certification of the performance goals). This transition period is applicable for compensation paid in connection with annual incentive bonuses, stock options, stock appreciation rights, restricted shares or restricted share units granted under the Annual Incentive Plans and the 2016 Stock Incentive Plan, as applicable, prior to the first regularly scheduled meeting of our stockholders that occurs beginning 12 months after the date of the Separation (which occurred on November 1, 2016). For compensation paid, and stock options, stock appreciation rights or restricted property granted under the Annual Incentive Plans and the 2016 Stock Incentive Plan after the date of that meeting, the plans must be approved by Alcoa's stockholders to retain this exemption from deduction limits under Section 162(m).

23. As a result, in order to continue providing compensation that is deductible under IRC § 162(m), Alcoa must re-submit the Annual Plan and the Stock Plan for stockholder approval by no later than its 2018 annual meeting, and the 2018 proxy statement must be compliant with Item 10(a)(1).

24. Moreover, the Proxy Statement reported that the Stock Plan's predecessor provided for three-year minimum vesting schedules for time-based restricted share and restricted share unit awards. It further reported that the Stock Plan itself reduced those minimum vesting periods to one year. According to Alcoa's public filings, it has only granted restricted share unit awards to its non-employee directors under the Stock Plan, which it did on May 12, 2017. As a result of the failure to properly submit the Stock Plan for approval in 2017, these awards should be attributed to the predecessor of the Stock Plan and will vest in 2020, not 2018.

## COUNT I
### (Exchange Act Violations of Voting Item 5)

25. Paragraphs 1 through 24 are reincorporated herein and state a direct claim for relief against the Company under Section 14(a) of the Exchange Act for acting in contravention of the rules and regulations prescribed by the SEC.

26. As a result of this conduct, plaintiff has been and will be injured, and she has no adequate remedy at law. She has suffered and will suffer harm in the form of uninformed votes by other stockholders on Voting Item 5.

27. To ameliorate the injury, relief is required in the form of an equitable decree nullifying the vote and the corporate actions taken based on it. Relief is required in the form of an equitable decree that Alcoa should re-solicit stockholder approval of the Annual Plan with a new proxy statement that provides the information required by Item 10(a)(1) no later than the 2018 annual meeting.

## COUNT II
### (Exchange Act Violations of Voting Item 6)

28. Paragraphs 1 through 24 are reincorporated herein and state a direct claim for relief against the Company under Section 14(a) of the Exchange Act for acting in contravention of the rules and regulations prescribed by the SEC.

29. As a result of this conduct, plaintiff has been and will be injured, and she has no adequate remedy at law. She has suffered and will suffer harm in the form of an uninformed vote by other stockholders on Voting Item 6.

30. To ameliorate the injury, relief is required in the form of an equitable decree nullifying the vote and the corporate actions based on it. Relief is required in the form of an equitable decree that Alcoa should re-solicit stockholder approval of the Stock Plan with a new

proxy statement that provides the information required by Item 10(a)(1) no later than the 2018 annual meeting.

31. In addition, relief is also required in the form of an equitable decree that the non-employee directors' restricted stock units granted on May 12, 2017 will vest not sooner than May 12, 2020.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff demands the following relief:

A. (i) An equitable decree nullifying the votes taken on Voting Items 5 and 6 and the corporate actions based on those votes; and

(ii) A new proxy statement re-soliciting votes on the Annual Plan and the Stock Plan with the information required by Item 10(a)(1) no later than the 2018 annul meeting.

(iii) An equitable decree that the non-employee directors' restricted stock units granted on May 12, 2017 will vest not sooner than May 12, 2020.

B. Awarding such other and further relief as this Court deems just and proper.

Dated: New York, New York
August 7, 2017

**BARRACK, RODOS & BACINE**

By: /s Arnold Gershon
A. Arnold Gershon
Michael A. Toomey
11 Times Square
640 8th Ave., 10th Floor
New York, NY 10036
Telephone: (212) 688-0782
Facsimile: (212) 688-0783

*Attorneys for Shiva Stein*

9